### E. C. Huddleston v. H. Kempner et al.

### No. 147.

**1. Husband and Wife—Transfer of Wife's Notes by Husband—Holder's Rights.**—Notes, the separate property of the wife, were endorsed by the husband, "For value received, I transfer the within note to F. M. Huddleston," and her name signed thereto. After their maturity he transferred them to K. as collateral security for a debt due by him to K., without the knowledge of his wife. K. had no actual knowledge of these matters. The husband told his wife that he had transferred the notes to himself when she was sick, so that in the event she did not recover he could collect them for the children. *Held*, K. took the notes after maturity, subject to all the equities with which they were encumbered, and judgment in his favor upon them was erroneous.

**2. Estoppel on Wife.**—The husband could give K. no better title than he had. The wife is not estopped, by her signature to the transfer of the notes, to show that they were in fact transferred for collection only, and that she had never received anything for them.

Appeal from Anderson. Tried below before Hon. F. A. Williams.

*Thomas B. Greenwood,* for appellant.—1. When a note is payable to a certain person or order, such note is itself evidence of ownership in the payee until it is shown that the legal title has passed out of the payee by some valid endorsement or transfer; and where, in a suit by the payee, the defendant claims that such a note has been transferred to him, and the payee denies under oath the execution of any such transfer, the burden of proof is upon the defendant to show a valid transfer by the payee. Rev. Stats., art. 2262; Brashear v. Martin, 25 Texas, 202; Austin v. Townes, 10 Texas, 30; Robertson v. Du Bose, 76 Texas, 1.

2. If appellant learned from her husband, after he had endorsed the notes to himself, while she was dangerously ill, that he had so endorsed them solely for the purpose of enabling him to collect them for her chil-

dren in the event of her death, this could not authorize the charge complained of; for appellant had a right to rely upon the good faith of her husband, and he had no authority to transfer the notes to Kempner or any one else as security for the payment of his individual debts. Rev. Stats., art. 1317; Bigham v. McDowell, 69 Texas, 101; Walker v. Wilson, 79 Texas, 187; Foley v. Smith, 6 Wall., 493.

3. If H. Kempner received the Singletary notes, after their maturity, from F. M. Huddleston as collateral security for his debts, he acquired only such title as F. M. Huddleston had, and no better; and the notes having been dishonored and past due, he took them subject to the superior and prior equities of the appellant. As appellant never parted with her title to, or received anything for the notes, appellee Kempner could acquire no title as against her to the notes by reason of the endorsements thereon. Walker v. Wilson, 79 Texas, 187, and cases cited; Weathered v. Smith, 9 Texas, 623; Foley v. Smith, 6 Wall., 493; Bank v. Turnley, 61 Texas, 370, and cases cited; Kempner v. Comer, 73 Texas, 196.

*Burnett & Gardner*, for appellees.—1. This being a suit for the recovery of a judgment on notes, and not a suit on the notes, the burden of proof was on appellant to show that she was the owner of the notes. Railway v. Chandler, 51 Texas, 416.

2. If appellant made or ratified the transfers on the notes whereby F. M. Huddleston was invested with the apparent legal title to the notes, the transferee could transfer an unimpeachable title to a bona fide purchaser. There is no distinction in this particular between chattels and assignable notes. Link v. Page, 72 Texas, 592; Hussey v. Moser, 70 Texas, 43, 47; Kesler v. Zimmerschitte, 1 Texas, 50; Merriman v. Fulton, 29 Texas, 98; 2 Herm. on Estop., secs. 978, 979; Moore v. Moore, 112 Ind., 149; Moore v. Bank, 55 N. Y., 41; Hill v. Shields, 31 Am. Rep., 499; Parker v. Stallings, 98 Am. Dec., 84.

GARRETT, CHIEF JUSTICE.—This suit was brought by Mrs. C. E. Huddleston against H. Kempner and I. N. Singletary to prevent the collection by the defendant Kempner of a judgment obtained by him in the District Court of Anderson County against his codefendant I. N. Singletary upon two promissory notes, with foreclosure of a vendor's lien on land, and that she be adjudged to be the true owner of said judgment, which she asked to have enforced for her benefit.

It was shown on the trial, that the notes upon which Kempner obtained the judgment against I. N. Singletary were two notes for $250 each, executed November 16, 1885, payable twelve and twenty-four months after date, respectively, to the order of C. E. Singletary, as plaintiff's name was then, she having subsequently married F. M. Huddleston. At the

time the notes were executed she was the widow of a brother of the defendant I. N. Singletary.   On the back of each note appears the following endorsement:  "For value received, I hereby transfer the within note to F. M. Huddleston.   December 15, 1887.   [Signed] C. E. Singletary."   Then follows the blank endorsement, " F. M. Huddleston."   Below each note appears the following memorandum pasted thereto:  "The balance due on the above note, principal and interest, up to November 16, 1889, is $350, which amount I agree to pay, with 10 per cent interest, on or before the 16th of November, 1890.   Witness my hand. [Signed] I. N. Singletary."

Kempner received these notes after maturity, February 1, 1889, from F. M. Huddleston as collateral security for money which Huddleston owed him.   They were sent to Huddleston to be renewed, and were returned to Kempner March 3, 1890.   Plaintiff and F. M. Huddleston were married April —, 1888, and Huddleston died in 1890.   Kempner brought suit on the notes against I. N. Singletary, and on May 1, 1891, recovered judgment against him for the sum of $772.80, with foreclosure of vendor's lien.

Plaintiff claims that the notes were her property when they were transferred to Kempner, and although her endorsement appeared to be without restriction, that Kempner took them after maturity charged with notice of her equities.   For this reason she assigns as error the following charges of the court:

"If plaintiff signed the transfers endorsed on the notes, or if F. M. Huddleston signed her name to them by her authority, or if he signed her name to them without her authority, but that she learned of said signature and assented to and ratified the same before the transfer to Kempner, and that such transfer to Huddleston was so made, authorized, or ratified by her for the purpose of passing the title to the notes, you will find for the defendant.

"And if she signed, or authorized or consented to, or ratified the signing of the transfers, as just supposed, by Huddleston, though for some other purpose, and not intending to part with the title to the notes, but left them with the transfers so made in Huddleston's hands, and if Kempner, on the faith of such transfer, and without notice of plaintiff's rights in the same, acquired the notes from Huddleston as security for money advanced to him, you will find for defendant.   In such case the private understanding between herself and Huddleston as to the purpose of the transfers would not protect her.   But if Huddleston signed her name to the transfers without her knowledge and consent, and if she did not consent and ratify such signature after it had been made, you will find for plaintiff."

The notes were the separate property of Mrs. Huddleston.   She testified, that she did not write or sign her name to the endorsements to F.

M. Huddleston on said notes, and never authorized any one else to sign her name thereto; that the first time she ever saw the endorsements was a few weeks before this suit was brought; and the first time she ever heard of a transfer of the notes was in April, 1888, after her marriage to Huddleston, when he told her that he had transferred the notes to himself while she was ill in March, 1888, in order to collect the money for her children in the event she did not get well. That Huddleston never did claim to own the notes, but held possession of them after marriage in order to collect them for her and her children; and she never knew that he could use them for any other purpose. That in November, 1889, her husband asked her if she wanted Singletary to convey the land upon which the notes were a lien, or renew the notes, and she told him to have the notes renewed, and he did so. She never knew that Kempner or any one else set up a claim to the notes until she learned that he had sued Singletary on them. She had never received anything on the notes.

Upon the authority of Walker v. Wilson, 79 Texas, 185, we are of the opinion that the charge complained of was erroneous. Kempner took the notes after maturity, and was charged with notice not only of whatever defense the maker may have had against them, but he took them subject to all the equities with which they were encumbered in the hands of the party from whom he received them. F. M. Huddleston could give to Kempner no better title than he had. Mrs. Huddleston is not estopped by her signature to the transfer of the notes, to show that they were in fact transferred for collection only, and that she had never received anything for them. Foley v. Smith, 6 Wall., 492.

Appellant also assigned as error, that the court erred in its charge to the jury, that possession of the notes by Kempner was prima facie evidence of ownership, notwithstanding the fact that plaintiff had denied under oath the transfer purporting to have been made by her. From the nature of the suit and the evidence in the case, there was no error in giving this charge.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 4, 1893.


Justice WILLIAMS did not sit in this case.